AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
AUG 0 2 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. |
| Hyundai cellular phone, Model number: G21826N IMEI1: 358467077077823, IMEI2: 358467077077832 | ) ) ) | 18MJ4290 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2, incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963 | Possession with intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael Prado, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/2/18

*Judge's signature*

City and state: San Diego, California          Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The property to be search in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, 963 is described below:

>Hyundai cellular phone
>Model number: G21826N
>IMEI1: 358467077077823
>IMEI2: 358467077077832
>
>**(Target Device #2)**

**Target Device #2** is currently in the possession of Homeland Security Investigations located at 185 West F street San Diego, California 92101.

## **ATTACHMENT B-2**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of November 24, 2017, up to and including February 24, 2018:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

I, Michael Prado, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device (hereinafter the **"Target Device #2[1]"**), as further described in Attachment A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, as more particularly described in Attachment B-2:

> Hyundai cellular phone
> Model number: G21826N
> IMEI1: 358467077077823
> IMEI2: 358467077077832

This search supports an investigation and prosecution of Joshua AVENDANO for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On February 24, 2018 HSI Special Agent Justin Trujillo was notified by Customs and Border Protection (CBP) Officers, who encountered AVENDANO at the Otay Mesa, California Port of Entry on or about February 24, 2018 at approximately 9:30 a.m. On February 24, 2018, Special Agent Justin Trujillo initiated his investigation related to AVENDANO's arrest. Special Agent Justin Trujillo was informed that AVENDANO who was the driver of a blue Ford Edge,

---

[1] See separate cover for an application for a search warrant regarding Target Telephone #1

1

that upon inspection, a total of 3 packages containing heroin with a net weight of 2.90 kilograms, 11 packages of methamphetamine with a net weight of 12.48 kilograms, and 1 package of alpha lactose monohydrate with a net weight of 1.14 kilograms were removed from the vehicle. Special Agent Justin Trujillo was notified by the Drug Enforcement Administration (DEA) lab that Alpha Lactose Monohydrate is a substance used in the creation of Fentanyl.

Special Agent Justin Trujillo was notified of the event via Sector dispatch. Special Agent Trujillo recovered **Target Device #2** from a property bin assigned to AVENDANO. **Target Device #2** was placed in the property bin of AVENDANO with other personal property belonging to him, including Target Telephone #1 and keys to the Ford Edge. Special Agent Trujillo showed **Target Device #2** to AVENDANO who confirmed orally and in writing that the phone was his. Agent Trujillo further discussed **Target Device #2** with AVENDANO who identified a contact name within the **Target Device #2**.

It is believed that the **Target Device #2** was used by AVENDANO to communicate with co-conspirators during the drug smuggling event. Defendant has been charged with importation of a controlled substance (methamphetamine & heroin) in the Southern District of California. Probable cause exists to believe that the **Target Device #2** contain evidence relating to violations of Title 21, United States Code Sections 952 and 960. **Target Device #2** is currently in HSI possession located at 185 West F street San Diego, California 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device #2** for and to seize the items set forth in Attachment B-2

(incorporated herein) which I believe will be found in the item to be searched as described in Attachment A-2 (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

5. On February 26, 2018, the United States Attorney's Office filed a Complaint charging AVENDANO with violating Title 21, United States Code Sections 952 and 960. AVENDANO appeared for his initial appearance on that day before the Honorable Mitchell D. Dembin and the following hearings were set: A Preliminary Hearing on March 8, 2018 and Arraignment on March 22, 2018. On March 22, 2018, AVENDANO waived indictment and was arraigned on an information for violating Title 21, United States Code Sections 952 and 960. A Motion Hearing and Trial Setting date was scheduled for April 20, 2018 before Judge Jeffrey T. Miller. That motion hearing was continued until July 27, 2018.

## EXPERIENCE AND TRAINING

6. I am a Special Agent (SA) with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been a Special Agent with HSI since October of 2010.

I am currently assigned to the ICE/ HSI San Diego Office.

7. I have completed approximately 24 weeks of intensive training in criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia (2010-11). As a result of my training and experience as a Special Agent, I am familiar with federal criminal statues to include violations of Title 18, 19, 21, and 8 of the United States Code.

8. Before being employed by HSI, I worked as a CBP Officer for approximately five years. Through my training and experience as a CBP Officer, I became aware of the methods that drug traffickers engage in order to accomplish their drug smuggling operations. During my experience in law enforcement, I have had training in narcotics investigations. I have participated in numerous debriefings of informants who had personal knowledge regarding narcotics trafficking. Additionally, I have had training in many aspects of drug investigations including undercover operations, conducting surveillance, and arrests.

9. I have participated in and conducted investigations of violations of various Federal criminal laws, including those related to narcotics violations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 952(a), and 960.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in smuggling and importation of

controlled substances, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in importation of controlled substances, and all the facts and opinions set forth in this affidavit, I submit the following:

- a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

- b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

- c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

- d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

- e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

- f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

13. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

   a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate

  the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

c.  tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

d.  tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine/ heroin or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

### Seizure of 2.9 Kilograms of Heroin, 12.48 Kilograms of Methamphetamine, and 1.14 Kilograms of Alpha Lactose Monohydrate

14.  On February 24, 2018, at approximately 9:30 a.m., CBP Officer Saenz was assigned to pre-primary roving operations when a blue Ford Edge bearing CA registered license plate 8AWY411 approached in lane 3. AVENDANO was the driver, owner, and sole occupant in the Edge. CBPO Saenz began to conduct a random inspection of the Edge and noticed AVENDANO was stiff and had his hands at 9 and 3 o'clock on the steering wheel. AVENDANO continued to move forward in line while CBP Officer Saenz conducted an inspection of the undercarriage. While

inspecting the spare tire and fuel tank, CBP Officer Saenz noticed tool marks and what appeared to be strategically placed dirt on the mounting bolt of the fuel tank. CBP Officer Saenz could also see the fuel tank had recently been painted and that the fuel filler hose was also cleaned off to suggest it was recently tampered with.

15. CBP Officer Saenz radioed for K9 assistance and asked AVENDANO to turn off the Edge. CBP Officer Saenz then asked AVENDANO if he was bringing anything into the U.S.A, to which AVENDANO replied that he didn't have anything. CBP Officer Saenz then asked where AVENDANO was going, to which he replied, "San Diego," because he is an Uber driver. CBP Officer Saenz then asked, "Do you have anything to declare for inspection?" AVENDANO denied a second time.

16. CBP Officer Spinoccia and his assigned K9 arrived on scene. CBP Officer Saenz asked AVENDANO, "Have you done any recent work, maintenances, or changes to your vehicle?" To which AVENDANO replied "No." CBP Officer Saenz then asked if he was the registered owner of the vehicle to which AVENDANO replied "Yes." When asked how long he had the vehicle AVENDANO replied "3 months." CBP Officer Saenz asked if anyone else drove the vehicle, AVENDANO stated he was the only driver of the vehicle.

17. CBP Officer Saenz asked again "So no changes or modifications to the car?" CBP Officer Saenz noticed a slight hesitation or pause before AVENDANO stated "No." CBP Officer Saenz asked, "Any work to the engine?" AVENDANO stated "No." CBP Officer Saenz did not notice any hesitation in that response. CBP Officer Saenz asked, "Any work or changes to the transmission?" AVENDANO said "No." again with no noticeable hesitation to his body language, tone, or demeanor. CBP Officer Saenz asked, "What about the gas tank? Any changes to the

8

tank?" CBP Officer Saenz stated AVENDANO looked down, with a brief pause, looked back up, and a slight tremor to his head and lips before answering "No, nothing." CBP Officer Saenz then asked, "Are you in any danger?" AVENDANO said "No." CBP Officer Saenz asked him if he was forced to bring anything into the U.S. that he did not want to bring. AVENDANO denied being forced against his will. CBP Officer Spinoccia notified CBP Officer Saenz that the K9 was alerting to the presence of narcotics.

18. CBP Officer Lopez contacted a contract mechanic who responded to remove the gas tank. Once the gas tank was removed it was observed that a non-factory box was built into the gas tank which had several packages inside. CBP Officer Lopez also observed that there were non-factory bolts with hooks on the tips welded onto the tank. These hooks had prevented the lowering of the gas tank which resulted in the mechanic having to cut through the bolts. With the tank removed, CBP Officer Lopez inspected the undercarriage again and saw non-factory sheet metal welded onto the undercarriage and non-factory holes that were drilled into the undercarriage. These holes were where the bolts with hooks were latched into, preventing the mechanic from lowering the tank.

19. CBP Officer Lopez probed a random package and extracted a brown powdery substance that field tested positive for the characteristics of Heroin. CBP Officer Lopez probed another package and extracted a crystalline substance that field tested positive for the characteristics of methamphetamine. Another of the packages probed revealed a white powdery substance that field tested positive for the characteristics of Alpha Lactose Monohydrate Special Agent Justin Trujillo was notified by the DEA lab that Alpha Lactose Monohydrate is a substance used in the

creation of Fentanyl. In total, 3 packages containing heroin with a net weight of 2.90 kilograms, 11 packages of methamphetamine with a net weight of 12.48 kilograms, and 1 package of alpha lactose monohydrate with a net weight of 1.14 kilogram were removed from the vehicle.

### Identification of Target Device #2 as AVEDANO's

20. Special Agent Justin Trujillo was notified of the event via Sector dispatch. The **Target Device #2** was found within the property bin assigned to AVENDANO. Since the **Target Device #2** was placed in the property bin of AVENDANO, Special Agent Justin Trujillo was able to determine that the **Target Device #2** was associated to AVENDANO.

### AVENDANO's Post-Arrest Interview

21. On February 24, 2018, at approximately 4:35 p.m., AVENDANO was transferred to the interview room at the Otay Mesa POE, Special Agent Justin Trujillo advised AVENDANO of his Miranda rights, reading directly from a pre-printed Advisement of Rights form, as witnessed by Special Agent Jack Brackney. AVENDANO acknowledged that he understood his rights and agreed to answer questions without an attorney present.

22. When asked if the car belonged to him, AVENDANO stated it was his and he had owned it for approximately three (3) months. When asked about the purchase of the vehicle, AVENDANO stated he found an ad for the car on Craigslist. When asked where he purchased the vehicle, AVENDANO stated he was uncertain but it was between downtown San Diego and Chula Vista, possibly the Barrio Logan area. When asked how much he paid for the vehicle, AVENDANO stated he paid $5,000 USD for it. When asked about his crossing history, AVENDANO stated he

works as an Uber driver in the USA but lives in hotels in Mexico so he has to cross every day. When asked what his crossing schedule was like, AVENDANO stated he usually drove from 8-9 am until 4-6 pm.

23. When asked why he was living in hotels in Mexico, AVENDANO stated he had been living in hotels since approximately December of 2017. He further stated that he previously lived in Anaheim, CA but got into an argument with his Uncle and moved south to be closer to his fiancé who had been deported. AVENDANO further stated that his fiancé was pregnant with their child. When asked what his fiancé's name was, AVENDANO stated her name was "Maria." When asked what her last name was, AVENDANO stated he did not know. AVENDANO further stated he visits "Maria" approximately every other Saturday.

24. When asked if he had had any work done to the vehicle, AVENDANO stated he had the brakes fixed sometime in February of 2018. When asked why he didn't tell the CBP Officer this when asked if he had work done to the car previously, AVENDANO claimed that he had told the CBP Officer. Special Agent Trujillo verified with the CBP Officer that AVENDANO had mentioned the brake work, the CBP Officer stated he did not mention getting the brakes worked on. When asked where he had the brakes worked on, AVENDANO stated he got them worked on in Tijuana close to San Ysidro but did not remember the name of the place. When asked how long the brake work had taken, AVENDANO stated it was approximately four (4) hours long. When asked how often he must fill up the gas tank, AVENDANO stated he was an Uber driver so usually every day. AVENDANO further stated that he gets approximately 300 miles on a full tank of gas, and approximately 16-20 mpg. AVENDANO also stated that it cost him approximately

11

$30 to fill up the gas tank.

25. When asked how he thought the narcotics got into the vehicle, AVENDANO stated that maybe the seller knew the brake mechanic and had the compartment ready. When asked if the seller had recommended the brake mechanic, AVENDANO stated the seller had not recommended the brake mechanic, he had picked it randomly.

26. When asked why he had two cellular phones, AVENDANO stated the Hyundai cellphone was for contact with his fiancé, through her father "Don Ernesto," and that the Samsung was for Uber driving.

27. Based upon my experience and investigation in this case, I believe that AVENDANO is involved in a conspiracy to smuggle narcotics from Mexico into the United States. Based on my experience investigating smuggling of controlled substances, I also believe that the **Target Device #2** was used to coordinate the smuggling of heroin, methamphetamine, and alpha lactose monohydrate from Mexico into California. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in smuggling activities.

28. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the smuggling activities of AVENDANO and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses,

appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

29. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, the **Target Device #2** will be collected and subjected to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

31. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

32. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that AVENDANO used the **Target Device #2** to facilitate the offense of smuggling of controlled substances. The cellular telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841, 843, 952, 960 and 963.

33. Because the **Target Device #2** was seized during the investigation of AVENDANO'S smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by AVENDANO'S continues to exist on the **Target Device #2**. As stated above, I believe that the appropriate date range for this search is from November 24, 2017, up to and including February 24, 2018.

34. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the **Target Device #2,** as described in Attachment A-2, and seize the items listed in Attachment B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief

*Michael Prado*
Michael Prado
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 2nd day of August 2018.

*Barbara L. Major*
The Honorable Barbara L. Major
United States Magistrate Judge